## Howells v. Howells

W. *Coburn Sweet, Jr.*, for libellant.

McCreary, P. J., June 17, 1948.—In the above-entitled case libellant seeks a divorce: (1) On the ground of indignities to the person, and (2) impotency. No effort was made on the part of libellant to establish any indignities to the person within the meaning of the Divorce Law. She relies entirely on her allegation that "at the time of the contract of marriage respondent was and still is naturally and incurably impotent, or incapable of procreation". The master, after hearing, filed a report wherein he concluded that libellant had not sustained the allegation of indignities to the person. He also concluded that the averment of impotency was not substantiated by the evidence and reached the conclusion of law that the divorce a. v. m. should be refused.

Exceptions were filed to the master's report by counsel for libellant as follows:

"1. Finding of fact as found in paragraph 13 of the master's report as follows 'That respondent was and still is naturally and incurably impotent and incapable of procreation, . . . was not substantiated by the evi-

dence', is contrary to the evidence produced at the hearing.

"2. Conclusion of law as found in paragraph 3 of the master's report is sustained neither by the evidence nor the law.

"3. The master's recommendation to the court is against the law and the evidence."

He followed these exceptions with the following prayer:

"Libellant respectfully requests that the court issue an attachment against Richard Jacob Howells, respondent, requiring him to submit to a physical examination to determine whether he was and now is naturally and incurably impotent."

We are satisfied from a reading of the testimony in the case that libellant has not made out a case showing that respondent was, at the time of the marriage contract, and still is naturally and incurably impotent or incapable of procreation. The master was correct in the conclusion which he reached, and certainly was right in making his recommendation that the libel be dismissed. The master did not have the power which the court has to grant a rehearing, after a libellant's case has been mishandled by her counsel. There is sufficient evidence in the case to convince the court that libellant may be entitled to a divorce on the ground of impotency if she calls witnesses who would be able to corroborate her. It is our thought that a competent physician could make a physical examination of respondent, and form an opinion and state it in the testimony, which would be sufficient corroboration of libellant.

In his brief of argument libellant's counsel cites Christman v. Christman, 7 Pa. C. C. 595, wherein the lower court reached the conclusion that a divorce on the ground of impotency may be granted on the unsupported allegation of the libellant. Unaccompanied by corroborating testimony or circumstances, if there

is no suspicion of collusion. While it is true the master finds, on the bald statement of libellant, that there was no collusion between the parties, we are not satisfied that this is the case. The only witness called by libellant in support of her testimony was her own mother, Anna C. Salyards. Libellant herself testified that respondent had never admitted to her that he was incurably impotent. She did testify, however, that her mother told her that respondent had admitted it to his mother-in-law. The mother-in-law of respondent testified that in the first part of July 1947 the following transpired:

"He was sitting at the table, but I never dreamed of a conversation like that; and, he just said, 'Well, you know, mother, I was up to the B. & W. doctor, today, and', he said, 'he told me that I could never have children'; and, I was amazed, of course, and he said, 'I love June, but,' he said, 'I can lie close beside her, and I have no sensation, and,' he said, 'I can't make myself raise.' He says, 'I don't know why, but,' he says, 'I can't make myself raise'."

If respondent made such an admission to the mother-in-law, we are at a loss to understand why he would pick that particular person to whom he would tell his story.

Libellant also testified that her sister told her that respondent told the sister that some doctor at Babcock & Wilcox Tube Company told respondent that he would never be able to have any children. The sister was not produced as a witness to testify against respondent as to impotency. This testimony was the rankest kind of hearsay, and should not be repeated at any further hearing in this case. If the sister has something to say as to the conduct or admissions of respondent, she should be produced as a witness. If the doctor at Babcock & Wilcox Tube Company told respondent that he could not have any children, the doctor should be produced to testify to such a statement.

An inference of collusion can be drawn from the fact that respondent confided in his mother-in-law, of all people, concerning his physical disability, if he confided in her at all. An inference of collusion might also be drawn from the fact that in this case there was filed a petition for counsel fees and costs returnable January 30, 1948. On that date, without hearing, the court, on the representation of counsel for libellant entered the following order: "By agreement of counsel, counsel fees fixed at $90". By agreement of what counsel? The record does not show the entry of any appearance of counsel for respondent. It occurs to the court that after the rule was served on respondent he might have handed libellant's counsel $90, but the record does not disclose who counsel for respondent was with whom libellant's counsel made the agreement.

Inasmuch as The Divorce Law of May 2, 1929, P. L. 1237, provides that a woman may be entitled to a divorce a. v. m. in the event that her husband "at the time of the contract, was and still is naturally and incurably impotent, or incapable of procreation", and inasmuch as libellant in this case was at the time of the hearing under the age of 21 years, with many years of life still facing her, we are not inclined to dismiss the libel without giving her an opportunity to at least attempt to prove her case. If counsel for libellant will point out to the court his authority for asking for an attachment of the person of respondent, and our authority to enforce such an attachment in a case like this, we will be inclined to honor his request. In the case of Biancucci v. Biancucci, 8 Beaver 77, we pointed out that the refusal of a respondent in a divorce case to submit to a surgical operation, not dangerous to life, to cure impotency was the equivalent of incurability. It might be that his refusal to submit to a physical examination might be

regarded as evidence corroborating libellant's testimony.

In conclusion we might point out that the appellate courts of Pennsylvania have made a distinction between impotency within the meaning of the divorce law and impotency within the common meaning of that term. It is not sufficient to show that a person cannot have children. There are many married people who cannot have children, because of some defect in either the wife or the husband, who are living a perfectly normal happy life. Neither could get a divorce from the other on the ground of impotency merely by showing that by reason of the fault of the other the married couple cannot have children. As was held in Wilson v. Wilson, 126 Pa. Superior Ct. 423:

"Sterility or incapacity to procreate is not an independent ground for divorce where it appears that the party complained against is capable of natural and complete copulation.

"Under the Divorce Law of May 2, 1929, P. L. 1237, which provides that the injured spouse may obtain a divorce where it appears that the other spouse was at the time of the contract and still is naturally and incurably impotent, or incapable of procreation, the phrase 'or incapable of procreation' is but explanatory of 'impotence', 'or' being used in the conjunctive or explanatory sense of 'and'." (Syllabus.)

This distinction must be kept in mind when the case is reheard.

We are going to refer this case back to the master to take additional testimony on condition that libellant's counsel deposit in court the sum of $50 to cover the additional master's fee for a rehearing of the case, and an additional sum of $25 to cover any additional costs that may accrue such as stenographer's fee, motions, orders, etc.

We therefore make the following

*Order*

Now, to wit, June 17, 1948, upon consideration of the testimony in the case and the exceptions to the master's report, the exceptions are hereby overruled, but the case is referred back to the master, Paul H. Baldwin, Esq., for the purpose of taking additional testimony; notice of the time and place of hearing to be given to respondent in accordance with the rule of this court; in the event that counsel for libellant fails to deposit in the office of the prothonotary the sum of $75, for the purposes mentioned, within 15 days from the date hereof the libel will be dismissed at the cost of libellant, an entry to that effect to be made by the prothonotary without further order of this court.